UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANDRE JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14-cv-00319-JMS-DKL |
| ) | |
| M. TATLOCK Counselor, ) | |
| ) | |
| Defendant. ) | |

**Entry Denying Motion for Summary Judgment**

Plaintiff Andre Jones, a former inmate of the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), brings this lawsuit pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Jones asserts that defendant correctional officer Tatlock, who is responsible for assigning cells and bunks, knew that Jones suffers from seizures, but failed to ensure that Jones was assigned to a bottom bunk. Jones alleges that this denial violated his Eighth Amendment rights because he later fell from his upper bunk and was injured. Tatlock moved for summary judgment and Jones has responded. Because there is a dispute of fact regarding whether Tatlock was deliberately indifferent to a serious risk of harm to Jones, Tatlock's motion for summary judgment [dkt 27] is **denied**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can

also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.

Jones responded to the motion for summary judgment, but included no evidence or statement of material facts in dispute with his response. Jones's bald assertion in his response to the motion for summary judgment that "M. Tatlock did a lot of lying," is insufficient to raise a genuine issue of material fact. *See Albiero v. City of Kankakee,* 246 F.3d 927, 933-34 (7th Cir. 2001) (noting that conclusory statements are insufficient to survive summary judgment); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Jones's failure to properly oppose the motion for summary judgment with a statement

2

of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of the defendant's statement of material facts for purposes of the motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir.2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994). This does not alter the standard for assessing a Rule 56 motion, for the record must support summary judgment as a matter of law irrespective of whether the non-moving party has filed an opposing memorandum, *see, e.g., Van de Sonde v. Van de Sande,* 2008 WL 239150 (N.D.I11 .2008), but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir.1997).

## II. Undisputed Facts

The following statement of undisputed material facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Jones as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

A. *Bunk Assignments at the USP Terre Haute*

Upon his arrival at the USP Terre Haute, Jones was issued a lower bunk pass due to his documented history of intermittent seizures. Lower bunk passes are issued by Health Services Staff to inmates with sufficiently serious medical conditions. A lower bunk pass does not guarantee that an inmate will receive a lower bunk assignment because of the large population of inmates at USP

3

Terre Haute and the relative aging of the prison population. There is no federal Bureau of Prisons ("BOP") policy requiring that an inmate with a lower bunk pass be housed in a cell with an open lower bunk. For this reason, if an inmate with a lower bunk pass requests to be moved to a cell that does not have a lower bunk available, it is not a violation of BOP policy for the counselor or correctional officer to accommodate that request. Moreover, managing lower bunks can be a very difficult, time-consuming, endeavor and often requires collaboration between inmates and staff. If an inmate with a lower bunk pass is assigned to a top bunk, it is incumbent upon that inmate to immediately notify staff if he believes his safety is at risk so that the staff may attempt to reassign the inmate.

B. *Jones's Bunk Assignments*

Beginning on July 12, 2013, Jones was housed in Unit F-2 at USP Terre Haute ("Unit F-2"). Tatlock was the Correctional Counselor assigned to Unit F-2. On July 12, 2013, Jones was assigned to the lower bunk in cell 109, which is reflected on prison records as 109L. On July 25, 2013, Jones was reassigned to the lower bunk in cell 209 (209L). Although Jones's cellmate in cell 209 initially ceded the lower bunk to him, the cellmate ultimately coerced Jones to move into the upper bunk. Jones did not tell Counselor Tatlock that his cellmate forced him to move to the upper bunk. Jones also did not tell Counselor Tatlock that he had any safety concerns in cell 209 and Jones did not request protective custody. Thus, as far as Counselor Tatlock knew, Jones was occupying cell 209L without incident. However, on the morning of August 5, 2013, Jones requested to be moved to cell 101. Although cell 101 may have appeared to Jones to be empty, the lower bunk of cell 101 was already assigned to inmate Christopher Nickens who used a wheelchair and a C-pap machine. Jones was therefore assigned to the upper bunk of cell 101 (i.e., 101U).

4

Jones had previously been assigned to an upper bunk without incident. Jones pointed out that he had a lower bunk pass, but Tatlock said "You know what to do" and Jones climbed into the upper bunk.[1]

On the afternoon of August 6, 2013, Jones was sitting on the upper bunk of cell 101 and his cellmate, inmate Nickens, was asleep on the lower bunk of cell 101. When RN Benefiel arrived at the door of cell 101 to distribute prescription medications, Jones attempted to climb down from the upper bunk to wake inmate Nickens. While climbing down from the upper bunk, Jones claims that he experienced a dizzy spell, lost his balance, and fell and struck his head on the toilet. Corrections officers opened the door of cell 101 so that RN Benefiel could examine Jones. Jones was alert and oriented and did not have visible cuts or bruises. He was instructed to take over-the-counter medication for any pain and to notify staff or sign up for sick call if he experienced any further problems.

Several hours later, on the evening of August 6, Jones felt as if he was going to have a seizure. He attempted to climb down from the top bunk so that he could alert corrections officers that he needed medical attention. While climbing from the top bunk, Jones lost his balance, fell, and struck his head on the floor of his cell. Corrections officers summoned RN Scharff to cell 101 and she escorted Jones, who had been placed on a backboard and a stretcher, to Health Services. Jones was oriented and did not have any visible injuries. He did, however, note that he had a lower bunk pass but had been assigned to a top bunk. RN Scharff spoke with the on-duty operations lieutenant, and Jones was moved to the lower bunk of cell 224 (224L).

---

[1] Tatlock asserts that Jones did not complain at all to Tatlock about this arrangement, but the deposition testimony Tatlock cites does not support this proposition. Jones testified at his deposition that he told Tatlock and another officer that he had a lower bunk pass, that they told him to get in the upper bunk anyway, and that he complied. Dkt 27-12, pg 4.

### III. Discussion

Jones's claim against Tatlock is brought pursuant to the Eighth Amendment to the United States Constitution. The Eighth Amendment requires prison officials to provide humane conditions of confinement. In other words, prison officials must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious risk of harm; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).

In support of his motion for summary judgment, Tatlock first argues that Jones was not subjected to a serious risk of harm because he was not deprived of the minimal civilized nature of life's necessities. An "objectively 'sufficiently serious'" risk, is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency. *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quoting *Farmer*, 511 U.S. at 832). Arguing that Jones was not exposed to an objectively serious risk, Tatlock compares Jones's claims to cases in which an inmate had a viable alternative to sleeping on the upper bunk and cases in which a cell assignment made the inmate's ability to move around his cell and care for himself slightly more difficult. But those case are not similar to the facts in this case. It is undisputed that Jones suffers from a seizure disorder and that because of this, Health Services issued him a lower bunk pass

presumably to alleviate the risk to Jones of falling from his bunk when having a seizure. It is also undisputed that when he was assigned to share cell 101 with Nickens, who required the lower bunk because he used a C-PAP machine and a wheelchair, there was no alternative for Jones but to use the top bunk. It can be reasonably inferred from the undisputed facts that because of the C-PAP machine and the wheelchair, there was not even room on the floor of that cell for Jones to sleep. In these circumstances, a reasonable jury could conclude that Jones had no choice but to use the upper bunk and because he suffers from seizures, he was subjected to an objectively serious risk of harm.

Tatlock goes on to argue that he did not act with deliberate indifference to the risk to Jones. "[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). Based on this standard, a prison official "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "Deliberate indifference" describes "a state of mind more blameworthy than negligence" and often equated with recklessness. *Id.* at 835.

To support the conclusion that he was not deliberately indifferent, Tatlock compares this case to that in *Williams v. Ramos*, 71 F.3d 1246, 1251 (7th Cir. 1995). The plaintiff in *Williams* was transferred from the Segregation Unit at the Stateville Correctional Center to the Protective Custody Unit. Although the plaintiff presented a "medical certificate which stated that [he] should

7

be assigned a lower bunk," there were no lower bunks available and defendants refused to reassign another inmate so that he could have a lower bunk in the Protective Custody Unit. *Id.* at 1250. Agreeing that the defendants were not deliberately indifferent to the plaintiff's needs, the Seventh Circuit explained that the plaintiff had not been denied a lower bunk. "[T]he defendants offered [plaintiff] a choice: either accept an upper bunk in the Protective Custody unit, or return to a low bunk in the Segregation Unit." *Id.* at 1250. The Court concluded that the defendants' failure to "offer a lower bunk in [plaintiff's] preferred living situation" was not a constitutional violation. *Id.* at 1251.

      Tatlock argues that, like the plaintiff in *Williams*, Jones was not denied a lower bunk, but was simply denied a lower bunk in the cell he requested. To the contrary, a reasonable jury could find that Jones was denied a lower bunk. Jones requested specifically to move to cell 101 and Tatlock granted the request, but assigned him to the upper bunk in that cell because another inmate, who used a wheelchair and C-PAP machine, was already assigned to the lower bunk in that cell. There is evidence that when Jones pointed out to Tatlock that he had a lower bunk pass, Tatlock ignored this complaint and directed him to the upper bunk anyway. As Tatlock himself argues, "[i]f an inmate with a lower bunk pass is assigned to a top bunk, it is incumbent upon that inmate to immediately notify staff if he believes his safety is at risk so that the staff may attempt to reassign the inmate. Dkt. 28 at 3. That is exactly what Jones did here. By ignoring Jones's complaint about being assigned to a top bunk, a reasonable jury could conclude that Tatlock was deliberately indifferent to a serious risk of harm to him. *See Bolling v. Carter*, No. 12-C-3432 at 3 (7th Cir. Apr. 26, 2016) (reversing summary judgment on a pre-trial detainee's Fourteenth Amendment claim where the detainee obtained a lower bunk pass but was assigned to an upper bunk and fell);

8

*see also Herron v. Meyer*, No. 15-1659 (7th Cir. Apr. 25, 2016) (reversing summary judgment on a claim brought by a wheelchair bound prisoner where the prisoner was assigned to a non-accessible cell and was injured attempting to sue the bathroom). Tatlock is therefore not entitled to summary judgment on Jones's claim against him.

### IV. Conclusion

For the foregoing reasons, Tatlock's motion for summary judgment [dkt 27] is **denied**. Further proceedings in this action will be directed by a separate order.

**IT IS SO ORDERED.**

Date: April 28, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Andre Jones
11600 Lansdowne
Detroit, MI 48228

All electronically registered counsel